UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re

VICTOR BOSSERDT and ZINAIDA BOSSERDT,

                    Debtors.

_____

NONNA VERD,

                      Plaintiff,

v.

VICTOR BOSSERDT and ZINAIDA BOSSERDT,

                      Defendants.

No. C10-143Z

Bankr. Internal Appeal No. 10-S003

ORDER

      THIS MATTER comes before the Court on appeal from the United States Bankruptcy Court for the Western District of Washington. Having reviewed the opening, response, and reply briefs, as well as the record on review, the Court now AFFIRMS the Bankruptcy Court.

**Background**

      In 2006, Nonna Verd and Zinaida Bosserdt agreed to join in a banquet and catering business that would be an expansion of a restaurant Verd had opened two years earlier. Verd Decl. ¶¶ 15-16, docket no. 17-2, 5-6. Accordingly, Verd and Bosserdt registered a new corporation, RUNAR, Inc., on September 29, 2006. Id. ¶ 16 at 6. Both Verd and Bossert

ORDER - 1

served as corporate officers of RUNAR.  Initial Pro Se Br., App. 10, docket no. 15-2, 50. They intended RUNAR to operate the banquet and catering business despite Verd having already incorporated the restaurant business as King Pastry and Deli, Inc. ("KPD") two years earlier.  Initial Pro Se Br., App. 13, docket no. 15-2, 56.  Verd owned eighty percent (80%) of KPD and the remaining shares were owned by Tamara Babadzhanova who also was a creditor of KPD with outstanding loans.  Verd Decl. ¶ 20, docket no. 17-2, 7.  To obtain equal ownership interest in RUNAR,[1] Verd agreed to contribute her share of KPD while Bosserdt agreed to contribute cash to purchase Babadzhanova's interest in KPD, pay off certain loans, and remodel the expanded business premises.  Id. ¶¶ 18-21 at 6-7.

Verd and Bosserdt drafted a Stock Purchase and Sale agreement that appears intended to consolidate free and clear ownership of KPD in themselves.  Bosserdt agreed to pay $200,000 (as part of her contribution to RUNAR) to Babadzhanova who would transfer her outstanding shares of KPD back to KPD and release KPD from specific debts.  Verd Decl., App. 2, docket no. 17-2, 54.  Bosserdt paid the $200,000 to Babadzhanova's attorney on September 20, 2006 from the corporate bank account of INVIZ, Inc.[2]  Verd Decl., App.3,

///
///
///
///
///
///

---

[1] Verd and Bosserdt consistently referred to themselves as equal owners of RUNAR.  Verd Decl. ¶ 16, docket no. 17-2, 6; Bosserdt Decl. ¶ 3, docket no. 16-3, 22.  However, RUNAR never issued stock.  Hr'g Tr., docket no. 15-2, 7.

[2] Earlier that year, Verd and Bosserdt had attempted a different business, INVIZ, Inc., which never began operations.  Verd Decl. ¶ 13, docket no. 17-2, 5.  Bosserdt had deposited funds into the INVIZ bank account and both Verd and Bosserdt now treated those funds as part of Bosserdt's contribution to RUNAR.  Id. ¶ 30 at 9; Bosserdt Decl. ¶ 5, docket no. 16-3, 23.

ORDER - 2

docket 17-2, 61.  Verd agreed to transfer all her stock in KPD to Bosserdt.[3]  Id.  After this transaction, Bosserdt owned all outstanding shares of KPD stock.

Although the banquet business apparently operated as planned for a short time, a misunderstanding between the parties arose over Verd's use of funds in the INVIZ account to pay debts related to previous KPD operations.  See Verd Decl. ¶¶ 41-44, docket no. 17-2, 12.  In early 2007, Bosserdt advised many banquet and catering customers to request refunds of their deposits.  Verd Decl., ¶¶ 49 & 63, docket no. 17-2, 13 & 93.  RUNAR revenue then declined sharply and stopped altogether in May.  Interrogs. of Pl., No. 8, docket no. 16-4, 18.  The business had not paid rent for several months and, on June 7, 2007, the business received a Pay Rent or Vacate Notice from its landlord.  Answer, Ex. E, docket no. 16-2, 44.

Bosserdt later attempted to negotiate a lease that did not include Verd.  Verd. Decl., App. 12, docket no. 17-2, 94; Verd. Decl., App. 13, docket no. 17-3, 2; Verd. Decl., App. 19, docket no. 17-3, 41; Verd. Decl., App. 28 and 29, docket no. 17-4, 29-34.  When Verd learned of Bosserdt's negotiations, she notified the landlord that any modification to the lease would require Verd's approval because of her ownership interest in RUNAR.  Verd. Decl., App. 20, docket 17-3, 43.  Bosserdt received offers to sell "the business" although it is unclear whether the offers refer to KPD or RUNAR.  Verd. Decl., App. 21-24, docket no. 17-4, 1-12.  In any case, there is no evidence that either KPD or RUNAR were sold or resumed operation.  The landlord disposed of all operating assets on the business premises after Verd and Bosserdt ignored requests to remove them.  Warnick Decl. ¶¶ 4-6, docket no. 16-3, 3.

---

[3] The parties intended KPD to operate as a subsidiary of RUNAR and to have KPD cease all independent operations and tax reporting.  Verd Decl. ¶ 23, docket no. 17-2, 7.  Accordingly, KPD filed a final tax return on September 30, 2006 indicating an intent to cease operations.  Verd Decl. App. 4, docket no. 17-2, 64.  The parties apparently intended that Bosserdt would transfer her KPD stock to RUNAR.  See Verd Decl. ¶ 23, docket no. 17-2, 7; Bosserdt Decl. ¶ 3, docket no. 16-3, 22 ("I invested all of my KPD stock into RUNAR.").  Despite these intentions, there is no evidence that Bosserdt transferred the KDP stock to RUNAR.  This failure seems to have caused confusion for both parties and later formed the basis for Bosserdt's attorney's claim that Bosserdt was the sole owner of KPD.  Initial Pro Se Br., App. 8, docket no. 15-2, 46.

ORDER - 3

After the parties' business relationship had fallen apart, Bosserdt told the Washington Department of Financial Institutions ("WDFI") and other officials that Verd did not disclose the Babadzhanova debts when Verd transferred KPD stock to her. Bankr. Adv. No. 09-010000-SJS, Carlson Decl. ¶ 92, docket no. 19, 2.

In September 2007, Verd filed an action for breach of fiduciary duty against Bosserdt in King County Superior Court arising from the operation of RUNAR. Superior Court 07-2-29212-8SEA, Compl., docket no. 15-2, 35. Bosserdt filed for Chapter 7 Bankruptcy in October 2008 and Verd's Superior Court claim was listed as a contingent liability in Bosserdt's bankruptcy schedule. Ch. 7 No. 08-16512 SJS, Petition, docket no. 1. Verd initiated an adversary proceeding in January 2009 alleging that Bosserdt's debt was non-dischargeable because it was the result of: (1) false representations or fraud, U.S.C. §523(a)(2)(A); (2) fraud or defalcation while acting in a fiduciary capacity, U.S.C. §523(a)(4); and (3) willful and malicious injury, U.S.C. §523(a)(4). Bankr. Adv. No. 09-010000-SJS, Compl., docket no. 1. After a hearing, the Bankruptcy Court granted Bosserdt's motion for summary judgment and discharged the debt. Judgment, docket no. 1-5. Verd now timely appeals. Notice of Appeal, docket no. 1-2.

**Discussion**

**A.     Standard of Review**

A district court reviews the bankruptcy court's conclusions of law de novo and reviews determinations of fact for clear error. Neilson v. United States (In re Olshan), 356 F.3d 1078, 1083 (9th Cir. 2004).

Summary judgment should be granted if the admissible evidence shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(c). The court draws all inferences from the admissible evidence in the light most favorable to the non-moving party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). Where, as here, the non-moving party

bears the burden of proof at trial, that party must go beyond the pleadings "and designate specific facts showing that there is a genuine issue for trial" after the movant has informed the court of the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Exceptions to discharge under 11 U.S.C. § 523 must be proven by a preponderance of the evidence rather than clear and convincing evidence, even for claims of fraud. Grogan v. Garner, 498 U.S. 279, 286 (1991).

**B.     No Exception to Discharge**

None of appellant's claims for exception to discharge have merit. Appellant has claimed error in each of three alternative causes of action under 11 U.S.C. § 523: (1) debt based on false representations or fraud; (2) debt based on fraud or defalcation while acting in a fiduciary capacity; and (3) debt for willful and malicious injury. As any one claim, if meritorious, would be sufficient to preclude discharge, the Court will address each claim separately.

1. False Representation or Fraud

Bankruptcy statutes do "not discharge an individual debtor from any debt of money, property [or] services . . . to the extent obtained by false pretenses, a false representation, or actual fraud, . . ." 11 U.S.C. § 523(a)(2)(A). This exception from discharge requires, among other elements, a showing that the misrepresentation caused the creditor loss or damage. In re Hultquist, 101 B.R. 180, 183 (B.A.P. 9th Cir. 1989).

Verd alleges Bosserdt made false representations by failing to disclose that she was (1) "spreading false rumors" (to encourage customers to cancel orders and request deposit refunds); (2) negotiating with the landlord to lease the RUNAR business premises under another name; and (3) negotiating to sell RUNAR's assets and retain the proceeds.

Verd does not explain how any of these non-disclosures caused her damage. There is no evidence that Verd would have acted any differently or would have been in a better

position if Bosserdt's recommendations to customers had been disclosed.  Any damage from Bosserdt's recommendations to customers seems to be a result of the recommendations themselves, not whether they were disclosed.  The non-disclosure of negotiations with the landlord also did not change Verd's position.  There was no new lease or modification of the lease facilitated by the non-disclosure.  Bosserdt also notified Verd of multiple offers to purchase the business.  Offers, disclosed or non-disclosed did not change Verd's position because there is no evidence of an actual sale.  Consequently, Verd has not shown that Bosserdt's actions caused her any damages and the Bankruptcy Court properly dismissed this claim.  See Hultquist, 101 B.R. at 83.

### 2. Fraud or Defalcation While Acting in a Fiduciary Capacity

An exception from discharge is made for "any debt for fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. §523(a)(4).  The exception applies "where (1) an express trust existed; (2) the debt was caused by fraud or defalcation; and (3) the debtor acted as a fiduciary to the creditor at the time the debt was created." In re Bigelow, 271 B.R. 178, 186 (B.A.P. 9th Cir. 2001).  The first element, the existence of an express trust, is defined by state law. In re Hulquist, 101 B.R. 180, 183 (9th Cir. B.A.P. (Wash.), 1989).

The Court assumes without deciding that Bosserdt, as a corporate officer, had a fiduciary duty to the corporation and its owners under these circumstances.[4]  This duty extended to Verd as one of the owners of RUNAR.  Even so, Verd submitted no evidence of a debt that resulted from a breach of this fiduciary duty.  Instead, Verd relies on the same non-disclosures the court has already concluded did not cause damage to Verd.  There is no debt, and consequently the Bankruptcy Court properly dismissed this claim.

---

[4] This assumption is consistent with Butko v. Healy (In re Healy), 61 Fed.Appx. 350, 2003 WL 1497986, at *2 n.1 (9th Cir.) (holding that, under Washington law, corporate officers act in a fiduciary capacity within the meaning of 11 U.S.C. §523(a)(4)).

ORDER - 6

### 3. Willful and Malicious Injury

An exception from discharge may be made for "any debt for willful and malicious injury." 11 U.S.C. §523(a)(6). "[W]illfulness and malice are two separate requirements." Dakota Steel, Inc. v. Erik Dakota (In re Erik Dakota), 284 B.R. 711, 726 (Bankr. N.D. Cal. 2002). "A malicious injury involves: (1) a wrongful act; (2) done intentionally; (3) which necessarily causes injury; and (4) is done without justification or excuse." Id. The exception applies to a willful injury, not merely a willful act that causes injury. Kawaauhau v. Geiger, 523 U.S. 57, 60 (1998).

Bosserdt signed the Stock Purchase and Sale Agreement which disclosed certain KPD debts; she later misrepresented to the WDFI that Verd failed to disclose these debts at the time Verd transferred King Pastry and Deli stock. Verd is entitled to the reasonable inferences that this representation was intended to harm her and that Bosserdt acted without justification. Bosserdt has not refuted these inferences. However, Verd submitted no evidence of injury resulting from Bosserdt's conduct.[5] Consequently, the Bankruptcy Court properly dismissed this claim. See Dakota, 284 B.R. at 726.

## C. Conclusion

For the foregoing reasons, Bankruptcy Judge Samuel J. Steiner's Order, entered as docket no. 32 in Case No. 09-01000-SJS (Bankr. W.D. Wash. Jan. 8, 2010) is AFFIRMED. Bosserdt's debt to Verd was properly discharged. The Clerk is directed to enter judgment consistent with this Order, to CLOSE this case, and to send a copy of this Order to all counsel of record, to the pro se appellant, and to Bankruptcy Judge Samuel J. Steiner.

---

[5] Verd faces significant fines based on charges by the WDFI. Resp. Br., Ex. G, docket no. 16-2, 64. However, Verd provides no evidence that these fines are the result of Bosserdt's false misrepresentations rather than actual violations and Verd does not claim the amount of these fines as damages.

ORDER - 7

IT IS SO ORDERED.

DATED this 17th day of September, 2010.

_____
Thomas S. Zilly
United States District Judge